IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESTATE OF AMADOR HERNANDEZ, JR., AMADOR HERNANDEZ, III, Individually and as Representative of the ESTATE OF AMADOR HERNANDEZ, JR., AMANDA YVETTE HERNANDEZ, and MICHAEL HERNANDEZ | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:12-CV-04859-M |
| UNITED STATES OF AMERICA, and THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER DALLAS, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant University of Texas Southwestern Medical Center's ("UTSWMC") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) [Docket Entry #38]. Defendant argues that the Court does not have jurisdiction to hear such claims pursuant to the Eleventh Amendment to the United States Constitution and urges the Court to dismiss all of Plaintiffs' claims against it. For the reasons set forth below, UTSWMC's Motion to Dismiss under Rule 12(b)(1) is **GRANTED**.

I. BACKGROUND

This Order resolves whether the Estate of Amador Hernandez, Jr. and his survivors may sue UTSWMC for its alleged role in his death, absent an explicit waiver by the State of Texas or Congress. Plaintiffs allege that Hernandez was the victim of repeated medical malpractice at the Veterans Administration Hospital in Dallas, which ultimately led to his death on December 22, 2010. In their initial Complaint [Docket Entry #1], Plaintiffs sued the doctors who allegedly

committed the malpractice: Shafi Mohamed, Philip L. Sladek, and Matthias Peltz. On December 21, 2012, Defendant the United States of America filed a Motion to Substitute itself as a party for Drs. Sladek and Mohamed [Docket Entry #17], which the Court granted [Docket Entry #21]. Plaintiffs then filed an Amended Complaint [Docket Entry #31] substituting UTSWMC for Dr. Peltz, alleging that he was acting in his capacity as an employee of UTSWMC. As a result, the only remaining Defendants are the United States of America and UTSWMC. Plaintiffs' Amended Complaint alleges numerous claims against UTSWMC, including negligence and violations of the Texas Tort Claims Act, Federal Tort Claims Act and Texas Medical Liability Act.

## II. STANDARD OF REVIEW

The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1346(b), because the suit involves a claim against the United States for personal injury caused by the alleged negligence of government employees while acting within the scope of their employment. UTSWMC's Motion is filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure which allows a party to challenge the district court's subject matter jurisdiction over it. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* In a 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exist. *Id.* "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

III. ANALYSIS

A. UTSWMC is an Agency of the State of Texas

The University of Texas Southwestern Medical Center is treated as part of the University of Texas System. Tex. Educ. Code § 65.02(a)(7). Under the Texas Government Code, a university system or an institution of higher education is a "state agency." Tex. Gov. Code § 572.002(10)(B). This status as a "state agency" affords such institutions sovereign immunity protection from lawsuits, under the Eleventh Amendment to the United States Constitution. *Whitehead v. Univ. of Tex. Health Science Center at San Antonio*, 854 S.W.2d 175, 180 (Tex. App.—San Antonio 1993, no writ) ("A state agency, as an arm of the state, is shielded by the sovereign immunity available to the state government."). This specifically applies to a state's universities. *Nat'l Sports & Spirit, Inc. v. Univ. of N. Tex.*, 117 S.W.3d 76, 81 (Tex. App.—Fort Worth 2003, no pet.) ("As an agency of the State, UNT enjoys the protection afforded by this sovereign immunity, except in instances where immunity has been expressly waived by statute."). Such sovereign immunity protection also extends to a public university's health institutions. *See Sullivan v. Univ. of Texas Health Sci. Ctr. at Houston Dental Branch,* 217 F. App'x 391, 392 (5th Cir. 2007) ("It is undisputed that UTHSC, as an arm of the state, is entitled to Eleventh Amendment immunity absent Congressional abrogation or voluntary waiver."); *Scott v. Pfizer Inc*., 182 F. App'x. 312, 315 (5th Cir. 2006) (holding that the University of Texas Medical Branch "is an agency of the State of Texas, giving it Eleventh Amendment immunity"). In any event, Plaintiffs do not affirmatively dispute that Defendant is a state agency under Texas law. Rather, they argue that UTSWMC waived immunity and therefore consented to be sued.

B. Plaintiffs' Claims Are Barred by the Eleventh Amendment

Sovereign immunity is rooted in the Eleventh Amendment to the United States Constitution:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. Eleventh Amendment immunity encompasses suits by private citizens against the state in federal court. *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001). The Supreme Court has long held that the Amendment bars suits against a state by citizens of the same state. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)*; Papasan v. Allain,* 478 U.S. 265, 276 (1986). Sovereign immunity can be specifically abrogated only by Congress or by the express consent of the individual state. *Tex. v. Walker*, 142 F.3d 813, 820 (5th Cir. 1998); *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Congress must make its intention to abrogate such sovereign immunity "unmistakably clear in the language of the statute." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985). Therefore, unless the state consents to be sued, a suit against the state or one of its agencies in federal court is barred by the Eleventh Amendment. *Ripley v. Univ. of Tex. Health Science Ctr.*, 400 F. Supp. 2d 933, 938–39 (W.D. Tex. 2005); *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997) ("A plaintiff cannot avoid the sovereign immunity bar by suing a state agency or an arm of a State rather than the State itself.").

C. Allegation That UTSWMC Waived Immunity By Consent

Plaintiffs allege that UTSWMC waived immunity by contracting for medical services with the United States Department of Veterans Affairs. *Resp.* ¶ 19. Plaintiffs attached a portion

of the contract to their Response and as a separate filing, Supplemental Exhibit A. [Docket Entry #44]. A material term of that contract required UTSWMC to have "Indemnification and Medical Liability Insurance" and specified that a "minimum acceptable limit of liability is $1,000,000.00." *Id.*

Plaintiffs cite the federal contracting clause to support their argument that UTSWMC "waived immunity." 48 C.F.R. § 52.237–7. However, Plaintiffs fail to describe how that clause relates to the alleged waiver of sovereign immunity, especially since the contract between UTSWMC and the United States does not contain any explicit abrogation of the Eleventh Amendment. Plaintiffs correctly describe an indemnity agreement as a promise to hold the indemnitee harmless from loss, yet then broadly claim that UTSWMC "waived immunity by accepting indemnification as a condition of contract with Defendant United States." *Resp.* ¶ 23. However, Plaintiffs cite no cases supporting that proposition, nor do they point to any Congressional or voluntary abrogation of sovereign immunity for the instant case. Plaintiffs contend that they have not seen the entire contract between the VA and UTSWMC, but the Court has no basis for finding a waiver of immunity from the proffered evidence, nor will it speculate as to what could be extant in documents not presented. A plain reading of the relevant excerpt provided in Plaintiffs' Response shows UTSWMC agreed to indemnify the United States if the *United States* is sued, but did not waive sovereign immunity so as to allow a private citizen to sue UTSWMC.

### D. Federal Strings

Plaintiffs argue that because UTSWMC entered into an agreement with the United States and took federal funds, in doing so it accepted "federal strings," which constitutes a waiver of immunity. However, Plaintiffs fail to make a substantive connection between the concept of

"federal strings" and how it allegedly abrogates the Eleventh Amendment or sovereign immunity. *Resp.* ¶¶ 24–25. Plaintiffs cite *Turner v. Univ. of Tex. Sw. Med. Ctr.*, arguing that the Court may find waiver, based on receipt of federal funds or participation in a federal program, when there is "express language"" of waiver or when there are "overwhelming implications from the text [that] leave no room for any other reasonable construction." 2007 WL 959032, at *3 (N.D. Tex. Mar. 30, 2007) (Lindsay, J.). But Plaintiffs neglect a key factor of that holding: any Congressional abrogation of Eleventh Amendment immunity must be very specific:

> In determining whether Congress abrogated Eleventh Amendment immunity with respect to the ADEA, the Court stated that two predicate questions had to be resolved: "first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority.

2007 WL 959032, at *2 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). In this case, there is no overwhelming implication that the indemnity agreement abrogates the Eleventh Amendment. Plaintiffs also cite *Miller v. Tex. Tech Univ. Health Science Ctr.*, 421 F.3d 342, 352 (5th Cir. 2005), but make no reference to the central fact in the case: that a pertinent federal statute specifically abrogated the Eleventh Amendment. The *Miller* court considered whether acceptance of grants and gifts from the federal government waived sovereign immunity in the specific context of § 504 of the Rehabilitation Act of 1973 and 42 U.S.C. § 2000d-7. The court held that these statutes did abrogate the Eleventh Amendment because § 2000d-7 (a)(1) specifically provides so:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

*Id.* at 347 n.6. Yet Plaintiffs' suit against UTSWMC does not pertain to § 504 or any other non-discrimination provision, so the cited statute gives Plaintiffs no help. Similarly, Plaintiffs cite

*General Servs. Comm'n v. Little Tex. Insulation Co.*, 39 S.W.3d 591, 595 (Tex. 2001) to argue that when a state contracts, it is liable on such contracts as if it were a private person. However, Plaintiffs disregard a key holding of the case, namely that "there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature." *Id.* at 595.

### E. Texas Tort Claims Act

Plaintiffs assert a claim under the Texas Tort Claims Act ("TTCA"). Tex. Civ. Prac. & Rem. Code § 101. In *Sherwinski v. Peterson*, the Fifth Circuit held that the TTCA does not waive Eleventh Amendment immunity in federal court. 98 F.3d 849, 851 (5th Cir. 1996). In that case, the plaintiff sued the Texas Department of Criminal Justice under the Texas Tort Claims Act. The district court dismissed the plaintiff's claims under the TTCA, holding that "the statute waives sovereign immunity in state court only. . . . The Act clearly does not waive Eleventh Amendment immunity to suit in federal courts." *Id.* at 852. The result is the same here: the TTCA does not abrogate sovereign immunity in this case.

### F. Federal Tort Claims Act and Texas Medical Liability Act

Plaintiffs next refer to the Federal Tort Claims Act ("FTCA") and the Texas Medical Liability Act ("TMLA") as bases for their suit to proceed, yet both of these statutes are inapplicable. The FTCA applies only to suits against entities of the Federal Government. 28 U.S.C. § 1346(b)(1) ([T]he district courts shall have exclusive jurisdiction of civil actions on claims against the United States."). The TMLA explicitly states: "This chapter does not waive sovereign immunity from suit or from liability." Tex. Civ. Prac. & Rem. Code § 74.003. Plaintiffs could sue under the TMLA only after showing that UTSWMC forfeited immunity, which they have failed to do.

G. Supplemental Jurisdiction

Plaintiffs argue that the Court has supplemental jurisdiction over UTSWMC, citing to *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966). Federal jurisdiction exists over an entire suit, including state law claims, when the federal and state law claims derive from a common nucleus of operative fact and the plaintiff would be expected to try them both in one judicial proceeding. *Quick v. VistaCare, Inc.*, 864 F. Supp. 2d 492, 498 (N.D. Tex. 2012) (Fish, J.) (citations omitted). But as UTSWMC correctly notes, the *Gibbs* standard has been replaced by the Judiciary and Judicial Procedure Act, 28 U.S.C.A. § 1367 (1990); *see Raygor v. Regents of the Univ. of Minnesota,* 534 U.S. 533, 533 (2002). In determining whether to exercise or decline supplemental jurisdiction over state law claims, a court may consider both the factors listed in 28 U.S.C. § 1367(c), and common-law factors of "judicial economy, convenience, fairness and comity." *Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011). Specifically, §1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction.

The Supreme Court addressed this statute in *Raygor*, where the plaintiffs filed suit against a university under the Age Discrimination in Employment Act and argued for supplemental jurisdiction for claims under a state anti-discrimination law. 534 U.S. at 533. After the university asserted the application of the Eleventh Amendment, the federal court dismissed the entire suit. Subsequently, the plaintiffs filed suit in state court, contending that because the federal court had

supplemental jurisdiction over the state claims, the statute of limitations did not bar their suit in state court. In denying that the district court had supplemental jurisdiction, the court held:

> We cannot read § 1367(a) to authorize district courts to exercise jurisdiction over claims against non-consenting States, even though nothing in the statute expressly excludes such claims. Thus, . . . we hold that § 1367(a)'s grant of jurisdiction does not extend to claims against non-consenting state defendants.

*Id.* at 541–42. Here, the State of Texas is a non-consenting defendant under the Eleventh Amendment, and Plaintiffs cannot bootstrap their claims against UTSWMC merely by asserting related claims against the United States of America. Therefore, the remaining state law claims against UTSWMC involving the Texas Medical Liability Act cannot survive via supplemental jurisdiction and must be dismissed.

### H. Due Process

Plaintiffs assert due process rights arising out of the Fourteenth and Fifth Amendments to the United States Constitution, as well as Article 1, Sections 12, 17 and 19 of the Texas Constitution. *Resp.* ¶¶ 32–35. The same due process requirements are applied under the United States and Texas Constitutions. *Reid v. Rolling Fort Pub. Util. Dist.*, 979 F.2d 1084, 1089 (5th Cir. 1992). According to Plaintiffs, dismissing their claims would be inequitable under these constitutional provisions, yet they fail to elaborate nor do they cite any case law to support their position, instead relying on general notions of fairness. The Court cannot and will not abrogate sovereign immunity on this vague basis alone.

Additionally, Plaintiffs assert they have a "well-recognized common law cause of action for medical malpractice" that is "impaired by extending the protections of the Texas Tort Claims Act to deny a full and complete litigation of Plaintiffs' claims." *Resp.* ¶ 34. Yet the right to sue a state which has not consented can be conveyed only by the state or federal legislature. Tex. Civ. Prac. & Rem. Code § 101.025(a); *see also Tex. Natural Res. Conservation Comm'n v. IT-Davy*,

74 S.W.3d 849, 856 (Tex. 2002) ("We again reaffirm that it is the Legislature's sole province to waive or abrogate sovereign immunity."); *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 597 (Tex. 2001) ("We conclude that there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature.").

Plaintiffs' citation to the open courts doctrine is also misguided. This provision prohibits the Legislature from limiting common law causes of action. *Tex. Ass'n of Business v. Tex. Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993). Furthermore, "[a] litigant challenging a statute as unconstitutionally restricting a common law cause of action must demonstrate 1) that the statute restricts a well-recognized common law cause of action, and 2) that the restriction is unreasonable when balanced against the purpose of the statute." *Thomas v. Oldham*, 895 S.W.2d 352, 357 (Tex. 1995). Plaintiffs fail to meet the first requirement because their claims against the state under the Texas Tort Claims Act do not exist at common law, nor are they authorized by any statutes. Finally, Plaintiffs' demands for equity cannot save their claims under the open courts guarantee. *See Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 523 (Tex. 1995) ("Our duty to enforce the open courts guarantee does not allow us to rewrite legislation merely to try to craft a remedy that we might believe to be more inclusive or equitable.").

## IV. CONCLUSION

Defendant's Motion to Dismiss under Rule 12(b)(1) is **GRANTED**. Plaintiffs' claims against UTSWMC are barred by the Eleventh Amendment to the United States Constitution and are thus **DISMISSED with prejudice**. Costs of Court are taxed against Plaintiffs.

**SO ORDERED**.

July 15, 2013.

*[signature]*
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS